UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL ACTION NOS. 02-101-DCR
and 03-31-DCR
CIVIL ACTION NO. 07-81-DCR

UNITED STATES OF AMERICA                    PLAINTIFF


VS:                         RECOMMENDED DISPOSITION


KEITH DOUGLAS PHILLIPS                         DEFENDANT

\* \* \* \* \*

Pending are two identical § 2255 motions submitted by *pro se* Defendant Keith Douglas

Phillips. *See See* DE #101 (Case No. 02-101) & DE #38 (Case No. 03-31).[1] The District Judge that

sentenced Phillips referred the matter to the undersigned. Having fully considered the record,

including the duplicate § 2255 petitions, the response in opposition from the United States, and

Defendant's reply, the matter is ripe for decision. *See* DE #38, #47, and #60. For the reasons stated

herein, the undersigned recommends that the District Court DENY Movant any relief and DISMISS

the motions to vacate with prejudice.

**I. Facts**

A grand jury from the Eastern District of Kentucky indicted Phillips in September 2002 on

one count alleging identity theft, in violation of 18 U.S.C. § 1028(f). *See* DE #1 (Indictment)(Case

---

[1]

The underlying proceedings involved consolidated criminal cases. Phillips properly
submitted a separate § 2255 motion for each judgment. *See* Rule 2(d) of the Rules Governing
Section 2255 Cases. The two motions are otherwise identical. Thus, the docket entry citations refer
to Case No. 03-31, unless noted differently.

1

No. 02-101).  Pursuant to Defendant's consent in May 2003, the United States also transferred to this District an information from the Western District of Kentucky that charged six additional identity theft offenses under 18 U.S.C. § 1029(a)(5).  *See* DE #1-1 (Consent) and #1-2 (Information). Phillips subsequently entered into a "global" plea agreement that resolved both federal cases and also addressed pending state criminal charges.[2]  *See* DE #9 ¶¶ 2, 6 (hereinafter "Plea Agreement").

Under the agreement terms, Phillips agreed to plead guilty to all seven federal counts.  The plea agreement outlined the essential elements for each offense and the underlying factual basis. Phillips acknowledged in the agreement: the United States could prove the stipulated facts beyond a reasonable doubt; the facts accurately represented Defendant's conduct; and, the facts established the essential offense elements.  The agreement stated that the maximum statutory punishment for each count "is not more than 15 years in prison."  *See id.* ¶¶ 2-5, 7.

Based on enumerated Guideline calculations, the plea agreement anticipated a 77 to 96 month Guideline range.  Both parties pledged to recommend a Guideline-maximum 96 month prison term.  The agreement provision made clear, however, that the "recommendation does not bind the Court."  *See id.* ¶ 8.  Phillips also intended to seek a recommendation that he participate in a drug treatment program and serve his sentence at FMC Lexington or FCI Manchester.  The United States agreed not to object to these requests.  *See id.* ¶ 15.

Finally, the plea agreement waived Defendant's right to appeal the conviction or any sentence within the applicable maximum statutory penalty.  The waiver also barred Phillips from

---

[2]

Upon judgment in the federal case, the agreement allowed Phillips to plead guilty to state charges pending in Jefferson Circuit Court so he could serve the state and federal sentences concurrently.  *See* Plea Agreement ¶ 6.

2

challenging his conviction or sentence in a collateral action.[3]  *See id.* ¶ 12.  Phillips acknowledged

that the document contained the "complete and only Plea Agreement" between Defendant and the

United States, and he confirmed that the United States had made no additional promises.  *See id.* ¶

16.  By signing the document, Defendant represented that he reviewed the agreement with counsel,

understood its terms, and entered into the agreement voluntarily.  *See id.* ¶ 17.  The parties executed

the agreement on May 9, 2003.

The District Court conducted a rearraignment that same day.  At the hearing, the District

Judge verified Defendant's signature and confirmed that Phillips had reviewed the plea agreement

with counsel and understood its terms.  *See* DE # 32 at 14 (hereinafter "Rearraignment"); *see also*

*id.* at 27-28.  The United States summarized the plea agreement provisions, addressing the essential

offense elements; the factual statement; the recommended Guideline calculations and recommended

sentence; the provisions for the pending state charges; the appellate/collateral-attack waiver; and the

placement recommendations that Defendant would request from the District Court at sentencing.

*See id.* at 15-20.  Both Phillips and counsel acknowledged that the summary was accurate.  *See id.*

at 20-22.  Phillips also denied that he received any additional promises to plead guilty, and he

confirmed that the plea agreement was the "full and complete" bargain between him and the United

States.  *See id.* at 22.  According to Defendant, no one "threatened or in any way forced" Phillips

to assent to the plea agreement.  *See id.*

---

[3]

The waiver provision, however, included a narrow exception that "reserve[d] the right to
collaterally challenge [Defendant's] sentence computation," as it related to an anticipated concurrent
state sentence on the charges pending in Jefferson Circuit Court.  *See* Plea Agreement ¶ 12; *see also*
DE #32 at 18.

The District Judge himself reviewed the maximum statutory punishment, stating the penalty "would be not more than 15 years imprisonment." *See id*. at 23. In addition, the District Judge addressed the Sentencing Guidelines. *See id*. at 28-30. In particular, he warned Phillips that the Court may "depart" and "sentence above the guideline range" under some circumstances. *See id*. at 30. Phillips acknowledged that he understood. *See id*. ("Q: Do you understand that? A: Yes. Q: Has that been explained to you? A: (Nods head up and down)."). Likewise, the District Judge informed Phillips that he was bound to the plea agreement and could not withdraw from the bargain even if he received a sentence more extensive than expected. *See id*. at 31. Phillips again acknowledged his understanding. The Court next addressed the waiver provision. Aside from the narrow exception in the plea agreement, Defendant confirmed that he waived the right to appeal or collaterally challenge his conviction and sentence. *See id*. at 30-31.

Finally, the District Court reviewed the charges. *See id*. at 32-35. Phillips himself described the offense conduct, and he did not dispute the amount of loss/theft indicated in the plea agreement. *See id*. at 35-37. Defendant then entered a guilty plea to the charges in the indictment and information. The District Judge determined that Defendant's plea was "knowing and voluntary" and "supported by an independent basis in fact." *See id*. at 38.

The sentencing hearing occurred on October 16, 2003. The District Judge adopted the Guideline calculations in the PSR, which reflected a range of 77 to 96 months. *See* DE #26 at 10-11 (hereinafter "Sentencing"). Thus, the PSR corresponded to the recommended calculations in the plea agreement.[4] The District Court, however, considered an **upward** departure because

---

[4]

Phillips additionally stated at sentencing that he agreed to a consecutive twenty-four month incarceration term for a pending supervised release violation, which itself was at the top of the advisory Guideline range. Thus, Phillips agreed to a total prison term of 120 months. *See*

4

Defendant's criminal history score "substantially exceed[ed]" the thirteen-point threshold for the highest available criminal history category.[5]  *See id.* at 14; *see also United States v. Thomas*, 24 F.3d 829, 832 (6th Cir. 1994).  The District Judge invited the parties to respond to the departure issue.  *See* Sentencing at 15.

Phillips's attorney strongly advocated against a departure.  First, defense counsel explained that a departure would "gut" the principal objective of the plea agreement, because Phillips "gave up" potential suppression issues and a Speedy Trial Act claim and further agreed to the Guideline maximum (for both the substantive offenses and the supervised release violation) to prevent the United States from seeking a departure.  Furthermore, counsel contended that Defendant's past offenses, although numerous, did not involve violence or "large-scale fraud."  Last, counsel noted that Phillips was seeking mental health treatment for the first time, indicating a genuine effort at rehabilitation.  *See id.* at 15-26.  For its part, the United States asserted that it would "stand behind" the agreement, which bound the Government to recommend a 96 month sentence.[6]  *See id.* at 27-28.

Based on Defendant's extensive criminal history, the likelihood of recidivism, the need for deterrence, and the danger that Phillips posed to the community, the District Court found that a departure was, in fact, warranted.  *See id.* at 28-33.  The District Judge determined that the appropriate Guideline range was 140 to 175 months.  *See id.* at 35.  Phillips moved to withdraw his

_____

Sentencing at 12-13; *see also* Plea Agreement ¶ 9.

[5]

The PSR notified the parties that Defendant's extensive criminal history may warrant a departure.  *See* PSR ¶ 127; *see also* Sentencing at 7, 13-14.

[6]

However, the AUSA also later stated that he took no position on the departure issue.  *See* Sentencing at 27.

plea, at that point, because the new Guideline range nearly encompassed the fifteen year (180 month) statutory maximum. *See id.* at 36-39, 41. The District Court overruled the motion following an extended colloquy. *See id.* at 42; *see also* DE #12 (written order denying motion to withdraw). After the parties had an opportunity to address the adjusted Guideline range,[7] the District Judge imposed concurrent 165 month prison terms on all counts.[8] *See* Sentencing at 67-68.

Despite the waiver provision, Phillips appealed the sentence to the Sixth Circuit. He asserted that the sentence should be vacated because: (1) the District Judge made factual determinations to support the upward departure, in violation of Movant's Sixth Amendment right to a jury trial; (2) the plea agreement, under Rule 11, bound the District Court to impose a 96 month prison term; and (3) the United States violated the plea agreement by not opposing the upward departure and by objecting to Defendant's request to serve his sentence at FMC Lexington. *See United States v. Phillips*, 143 F.App'x 667, 670 (6th Cir. 2005). The United States moved to dismiss the appeal premised on the waiver provision. Phillips responded that the term was unenforceable, arguing: the waiver was too broad; the waiver was unknowing and involuntary; the sentence violated *Blakely v. Washington*, 124 S.Ct. 2531 (2004); the sentence violated binding terms in the plea agreement; and

---

[7]

Both Phillips and defense counsel made arguments for a sentence at the low end of the reconfigured Guideline range. *See* Sentencing at 42-58. The AUSA responded to Phillips's statements, but cautioned that he did not advocate a higher sentence due to the Government's promises in the plea agreement. *See id.* at 59-65.

[8]

At sentencing, Phillips also requested that the judgment recommend that Defendant participate in a mental health and/or drug treatment program and serve his sentence at FMC Lexington. In violation of the plea agreement, the United States objected to Defendant's placement at FMC Lexington because that facility apparently does not offer mental health treatment. *See* Sentencing at 74-75. The judgment ultimately reflected the Government's concern, recommending that the BOP designate Phillips to the facility closest to Defendant's Louisville residence that provides mental health and drug treatment programs. *See* DE #16 (Judgment)

the United States breached the plea agreement. *See id*. The substantive claims and waiver arguments thus overlapped significantly. Ultimately, the Sixth Circuit enforced the waiver and dismissed the appeal. *See id*. at 674. The pending § 2255 effort followed.[9]

## II. Issues

Substantively, Phillips now alleges the following claims:

a) The guilty plea was unknowing and involuntary because counsel and federal officials led Phillips to believe that a 96 month prison term "was written in stone;"counsel and federal officials informed Phillips that the District Judge provided no valid notice that the Court would depart upward; and counsel advised Phillips that he could withdraw the plea, under Rule 11, if the District Court did depart upward.

b) Counsel provided ineffective assistance because he failed to pursue a Speedy Trial Act claim; failed to object at sentencing after the United States breached the plea agreement; and failed to object at sentencing to "inflammatory comments" about Defendant's bad character.

c) The sentence violated *Blakely v. Washington*, 124 S.Ct. 2531 (2004) because the upward departure relied on facts improperly determined by the District Judge. Furthermore, Phillips asserts that *Blakely* should apply retroactively because the decision is a "watershed rule of criminal procedure."

d) The District Judge violated Rule 11 when he rejected the recommended sentence and then denied Defendant's motion to withdraw from the plea agreement.

e) The United States breached the plea agreement by not opposing the upward departure and by objecting to Defendant's request to serve his sentence at FMC Lexington.

Again, the United States responds that Phillips validly waived the right to pursue post-conviction relief. The Government also contends that Phillips may not relitigate any issues

---

[9]

Phillips also sought direct review from the United States Supreme Court, but the Supreme Court denied Defendant's petition for a writ of certiorari on March 27, 2006. *See Phillips v. United States*, 126 S.Ct. 1617 (Mar. 27, 2006). The § 2255 motions thus were timely.

adversely decided on direct appeal. Defendant's reply contests both waiver validity and the relitigation bar. The reply also reasserts that counsel was ineffective. On the merits, the United States denies that Phillips received constitutionally deficient representation.

### III.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255(a). To prevail on a § 2255 motion alleging constitutional error, a petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings." *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-22 (1993)). To prevail on a motion alleging non-constitutional error, a petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *See Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 82 S.Ct. 468, 471 (1962)).

The Court additionally recognizes Defendant's *pro se* status. *Pro se* petitions receive a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

## IV.  Analysis

### A. Waiver Enforcement

The plea agreement states that Phillips "waives the right to challenge in any collateral action the conviction, any sentence imposed, and the manner the sentence was determined, including, but not limited to, a proceeding under 28 U.S.C. § 2255[.]"[10]  *See* Plea Agreement ¶ 12.  By its terms, the waiver encompasses the pending motions and claims.  The United States asserts that the provision forecloses collateral relief.

According to the Sixth Circuit, the waiver provision is enforceable if "informed and voluntary."  *See In re Acosta*, 480 F. 3d. 421, 422 (6th Cir. 2007); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)(explaining that a defendant in a criminal case may waive any right via a plea agreement, including constitutional rights).  The Court finds that the record satisfies *Acosta/Watson*.

First, Phillips acknowledged by executing the agreement that he reviewed the document with counsel and understood its terms.  *See* Plea Agreement ¶ 17.  As shown, the plea agreement expressly bars § 2255 motions.  *See id*. ¶ 12.  At rearraignment, Phillips again affirmed before the District Court that he read the plea agreement, reviewed it with counsel, and understood its provisions.  *See* Rearraignment at 14, 27-28.  He also listened as the United States Attorney summarized the terms of the plea agreement, including the waiver provision.  *See id*. at 17-18.  Phillips and defense counsel both agreed that the summary was accurate.  *See id*. at 20-22.  In

---

[10]

Phillips does not invoke the narrow exception explicitly reserved in the plea agreement. Furthermore, based on the text of the waiver provision and the description from the plea hearing, the textual exception does not apply.  *See* Plea Agreement ¶ 12; *see also* Arraignment at 18.

9

addition, the District Judge personally addressed Phillips and specifically discussed the collateral-attack waiver. Phillips acknowledged that he understood the term. *See id*. at 30-31.

Thus, the District Judge's waiver inquiry and review plainly satisfied Rule 11(b)(1)(N). *See United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006)(finding Rule 11(b)(1)(N) met because the court "discussed" the waiver provision "in open court," and the defendant affirmed that he understood the "plea agreement"); *see also United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006). Moreover, Movant's responses were voluntary and under oath, and the District Court determined at the hearing that Phillips was competent. *See* Arraignment at 3, 5-9, 38. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *See Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977). Considering Defendant's representations in the plea agreement and during rearraignment, and the significance of his sworn statements, the Court can only conclude that Phillips made an "informed and voluntary" waiver.[11] *See In re Acosta*, 480 F. 3d. at 422. The Court next addresses and rejects Defendant's counter-arguments to enforcement.

---

[11]

The Court also notes that the Sixth Circuit enforced Defendant's appellate waiver. *See Phillips*, 143 F.App'x at 674. The holding arguably bars Phillips from relitigating the validity of the waiver provision. *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999)("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."). Even though the Sixth Circuit decision involved an appellate waiver and this action invokes a collateral-attack waiver, both waiver terms are in the same plea agreement provision, received the same review and attention from the District Court, and are subject to the same enforcement standard. *See Watson*, 165 F.3d at 488-89 (finding no substantive distinction between an appellate waiver and a collateral-attack waiver and noting that "both the right to appeal and the right to seek post-conviction relief are statutory rights that may be waived if the waiver is knowingly, intelligently, and voluntarily made").

### B.  Defendant's Counter-Arguments to Waiver Enforcement

### 1.

Phillips, despite the record, contends that he did not knowingly or voluntarily agree to the plea bargain or the waiver provision.  In particular, Phillips asserts that he was misled and coerced at a March 25, 2003 pre-plea meeting involving counsel, two AUSAs, and two federal investigators.  Phillips alleges:

> Defendant was coerced by these officers of the Court to believe Judge Reeves had not given adequate notice he would depart upward and that the Judge basically, has always gone along with most previous plea agreements. . . .  Defendant was coerced to believe . . . [that] it was only a formality that the Defendant would go through the usual plea colloquy and the Judge would accept the plea and sentence Defendant to 96 months per the agreement.  The Defendant was also advised by counsel that the notice given in the PSR that a upward departure was possible, was not sufficient notice.

*See* DE #60-1 at 1-2 (hereinafter "Reply").

The allegations have no merit.  First, Phillips indicated in the plea agreement itself that he **voluntarily** entered into the agreement.  *See* Plea Agreement ¶ 17.  At rearraignment, Phillips again acknowledged to the District Judge that no one "threatened or in any way forced" Defendant to agree to the plea bargain.  *See* Arraignment at 22; *see also Blackledge*, 97 S.Ct. at 1629(noting solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings).  Indeed, Movant executed the plea agreement on May 9, 2003 – more than a month after the alleged March 25, 2003 encounter.  Phillips does not contend that he was subject to any additional pressure to plead guilty, and there is no indication that Phillips ever reconsidered his decision.  Moreover, the Court hardly believes that the March 2003 meeting, as described, intimidated Phillips – a veteran criminal.  Thus, the

11

allegation that counsel and/or federal officials coerced Phillips to execute the plea agreement and plead guilty on May 9, 2003 – solely via plea negotiations on March 25, 2003 – is simply not credible.

Furthermore, the record does not suggest that anyone misled Phillips. The plea agreement clearly provided that the parties agreed only to "recommend" a 96 month sentence, and the provision explicitly stated that the "recommendation does not bind the Court." *See* Plea Agreement ¶ 8. Phillips repeatedly acknowledged that he reviewed the plea agreement with counsel and understood its provisions. *See id.* ¶ 17; *see also* Arraignment at 14, 27-28. In addition, the District Judge specifically warned Defendant at rearraignment that the Court may "depart" and "sentence above the guideline range" under some circumstances. *See id.* at 30. The District Judge also informed Phillips that he was bound to the plea agreement and could not withdraw from the bargain, even if the Court imposed a harsher than expected sentence.[12] *See id.* at 31. In both instances, Phillips affirmed to the District Judge that he understood. *See id.* at 30-31. Additionally, the meeting participants **could not** have advised Phillips at the March 2003 meeting that the departure warning in the PSR was inadequate, because the PSR obviously did not exist until **after** Movant's plea entry in May. On this record, Phillips cannot legitimately claim that he was misled about whether the recommended 96 month prison term was binding. *See, e.g., Boyd v. Yukins*, 99 F.App'x 699, 705 (6th Cir. 2004)("Any misleading information imparted to Boyd was remedied by the plea colloquy, which made it clear that she could face a sentence up to and including life imprisonment.").

---

[12]

In its agreement summary, the United States also stated that the District Court "is not bound" to the sentencing recommendations in the plea agreement. *See* Arraignment at 16.

Finally, Phillips expressly disavowed any unstated plea basis. Phillips twice confirmed that the plea bargain was the "complete" and only agreement between Defendant and the United States. In fact, Phillips specifically denied that he received any additional or undocumented promises to plead guilty. *See* Rearraignment at 22; *see also* Plea Agreement ¶ 16. As such, the Court rejects any allegation that Phillips was coerced, misadvised, or induced to accept the May 9, 2003 plea agreement.

2.

Phillips also suggests that he did not knowingly or voluntarily agree to the plea bargain and waiver provision because he believed the agreement became binding, under Rule 11(c)(1)(A), if the District Court accepted the agreement. However, a plain reading of Rule 11 shows that subsections (c)(1)(B) and (C) – not subsection (c)(1)(A) – control whether a plea agreement binds the District Court to a specific sentence.[13] The rule provides that a sentence recommendation pursuant to subsection (c)(1)(C) "binds the court once the court accepts the plea agreement," but a (c)(1)(B) provision "does not bind the court." In this case, the plea agreement referenced neither subsection (c)(1)(B) or (c)(1)(C). However, the *non-binding language* in the plea agreement, as explained by the Court and acknowledged by all parties, plainly tracked subsection (c)(1)(B). *See* Plea Agreement ¶ 8. As a result, Phillips should have known that the plea agreement did not bind the District Court to impose a 96 month prison term. Moreover, considering the structure of Rule 11,

---

[13] Rule 11(c)(1)(A) relates only to Government promises that it "will not bring, or will move to dismiss, other charges." The plea agreement in this case cited Rule 11(c)(1)(A) and featured a pledge pursuant to that subsection. *See* Plea Agreement ¶ 1; *see also id*. ¶ 9 ("The United States will not bring additional charges against the Defendant[.]"). Under Rule 11(c)(4), that *particular* promise became binding when the District Court accepted the plea agreement.

13

Phillips could not have reasonably believed that a citation to Rule 11(c)(1)(A) bound the District Court to a specific sentence.

The Court believes that Philips **actually** knew the plea agreement did not bind the District Court, for reasons in addition to the agreement terms and colloquy. Phillips reports that he asked officials at the March 25, 2003 meeting to "enter into a plea agreement under Rule 11(c)(1)(C) to assure this would lock the Court into the agreed upon 96 months." *See* DE #60-2 at 1 (hereinafter "Phillips Declaration"). However, Phillips explains that the parties did not pursue a binding (c)(1)(C) agreement because, according to defense counsel and then AUSA Hatfield, the District Judge disliked such provisions. *See id.* 1-2. Thus, Phillips knew from the beginning that Rule 11(c)(1)(C) – not subsection (c)(1)(A) – provided the proper textual authority to bind the District Court to a specific sentence. Moreover, Defendant obviously was aware that his plea agreement did not feature a binding sentencing provision under Rule 11(c)(1)(C).

Even if any confusion persisted about whether the recommended sentence was binding, the plea colloquy clearly resolved the nature of the plea. *See, e.g., Boyd*, 99 F.App'x at 705 (recognizing that a proper "plea colloquy" remedies "[a]ny misleading information). At rearraignment, the District Judge personally addressed Phillips and warned him that the Court may "depart" and sentence Phillips "above the guideline range." *See* Arraignment at 30. The District Judge also advised Defendant that the plea would be binding even if the Court departed. *See id.* at 31. On both occasions, Phillips acknowledged to the District Judge that he understood. *See id.* at 30-31. The Court thus rejects any allegation that Phillips was confused about the binding or non-binding status of the sentence recommendation under Rule 11.

14

3.

Next, Phillips urges the Court to invalidate the waiver provision because the United States breached the plea agreement. Movant maintains that the United States should have opposed the upward departure and improperly objected to Defendant's request to serve his sentence at FMC Lexington. Phillips, however, asserted the same argument on direct appeal, contending the waiver was unenforceable. *See Phillips*, 143 F.App'x at 673-74. The Court of Appeals found no breach on the departure issue. The Sixth Circuit held that the objection to Defendant's placement request violated the plea agreement, but the Court of Appeals enforced the waiver because the breach did not affect Phillips's substantial rights. *See id.*

The Sixth Circuit decision plainly bars this Court from reconsidering the argument. *See Jones*, 178 F.3d at 796 ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."). In this case, Phillips alleges no "highly exceptional circumstances" that would justify relitigation. *See id.* Instead, Phillips merely reasserts the same argument from appeal, *i.e.*, that a plea agreement breach "always affects the defendant's substantial rights," citing *United States v. Barnes*, 278 F.3d 644, 648 (6th Cir. 2002). *Compare Phillips*, 143 F.App'x at 674 *with* Reply at 2-4. The Sixth Circuit already specifically rejected Defendant's interpretation of *Barnes*. *See Phillips*, 143 F.App'x at 674. Because the collateral-attack and appellate waivers have the same enforcement standards and operational qualities, Phillips may not relitigate whether a breach of the plea agreement occurred and invalidates the waiver. *See Jones*, 178 F.3d at 796; *see also Watson*, 165 F.3d at 488-89 (comparing collateral-attack waivers to appellate waivers).

15

4.

Phillips also indicates that the District Court provided contradictory appeal advice.  *See* Reply at 7 ("[T]he Court clearly told the Defendant after sentencing that he had the right to appeal.").  Phillips refers to the notice mandated by Rule 32.  In this case, the court clerk "notified" Phillips that he had "the right to appeal [the] sentence to the Sixth Circuit Court of Appeals, which, on proper appeal, will review this case and determine whether there has been an error of law."  *See* Sentencing at 80.  The clerk's routine appeal advice, however, is "without effect" and has no impact on whether a defendant knowingly and voluntarily agreed to a waiver provision, even if the notice is superfluous or erroneous.  *See United States v. Fleming*, 239 F.3d 761, 763-65 (6th Cir. 2005); *United States v. Rice*, 145 F.App'x. 155, 157-59 (6th Cir. 2005).  This issue is thus immaterial to waiver enforcement.

5.

Finally, concerning waiver, Phillips maintains that he never intended to waive his right to effective representation, and he urges the Court to construe the waiver provision based on his subjective understanding.  Defendant's argument, however, does not comport with Sixth Circuit authority.  In *Davila v. United States*, 258 F.3d 448 (6th Cir. 2001), the Court of Appeals held that "[w]hen a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255."  *Id*. at 451.  The record in this case conclusively shows that Phillips made an informed and voluntary waiver.  As such, the waiver provision generally applies to ineffective assistance of counsel claims, per *Davila*.

16

In sum, the Court rejects all of Defendant's counter-arguments, relative to waiver enforcement.  As the foregoing analysis shows, Movant's contentions in avoidance have no legal or factual merit.  Therefore, the Court finds no valid basis to impair waiver operation in this case.

### C. Unknowing and Involuntary Guilty Plea

Among other claims, Phillips substantively alleges in the petition that he unknowingly and involuntarily pled guilty.  The Court ordinarily considers such allegations on the merits – even when the plea agreement contains an otherwise valid waiver provision – because "claims that a guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel . . . generally cannot be waived."  *See In re Acosta*, 480 F.3d at 422 n.2.

In this case, the guilty plea allegations essentially overlap Defendant's contention that he did not make an informed or voluntary waiver, an argument already rejected.  The petition states:

> Counsel and the AUSA coerced me to [plead guilty].  I was told this Judge always give advance notice if he intends to depart upward and no notice had been given.  All parties made me believe it was written in stone I'd receive a 96 month term of imprisonment.  This meeting was held on 3/25/03.  The pleas was not voluntary.  Trial counsel also failed to properly advise me of the consequence of the plea.  I was lead to believe if the Judge departed upward, I could withdraw my plea pursuant to Rule 11(c)(1)(A).

DE #38 at 5 (§ 2255 Petition).  The petition itself did not furnish any additional facts or include a supporting memorandum, but the reply from Phillips revisited the allegations and provided more information about the March 25, 2003 meeting.  The Court's waiver analysis, in part IV.B.1. *supra*, quoted a substantial passage from the reply, relative to the March 2003 meeting.

As in the waiver context, the Court refuses to credit Defendant's allegations or invalidate the guilty plea.  The plea agreement expressly provided that the parties agreed to "recommend" a 96 month prison term.  *See* Plea Agreement ¶ 8.  Moreover, the provision made clear that the

"recommendation does not bind the Court." *See id.* Phillips acknowledged, both when he executed the document and again at rearraignment, that he reviewed the agreement with counsel and understood its terms. *See id.* ¶ 17; *see also* Rearraignment 14, 27-28. In addition, the District Judge personally addressed Phillips at rearraignment and specifically explained that the Court may "depart" and sentence Phillips "above the guideline range." *See id.* at 30. The District Judge also warned Phillips that the plea would remain in effect even if Defendant received a sentence above his expectation. *See id.* at 31. Again, Phillips acknowledged to the District Judge after both inquiries that he understood. *See id.* at 30-31. Finally, Phillips indicated in his declaration that he knew the agreement did not adopt a provision under Rule 11(c)(1)(C) that would bind the District Court to a specific sentence.[14] *See* Phillips Declaration at 1-2.

Based on the explicit plea agreement terms, the substance of the plea colloquy, and the allegations in the declaration, the Court finds that Phillips had no basis to believe the sentence "was written in stone;" or that he could withdraw his guilty plea under Rule 11; or that the District Court would not conceivably depart upwardly from the Guideline range.[15] *See Blackledge*, 97 S.Ct. at 1629 (noting solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings); *see also Boyd*, 99 F.App'x

---

[14]

In its written order addressing Phillips's motion to withdraw his guilty plea, the District Court also previously determined that Defendant was fully aware of the potential for a departure and that his plea was valid. *See* DE #12 at 3, 14.

[15]

In addition, the PSR provided notice that the Court may depart based on Phillips's extensive criminal history. *See* DE #13 ¶ 127. Rule 32(h) indicates that such notice in the PSR was adequate. *See* Fed. R. Crim. P. 32(h) (requiring the District Court to provide "reasonable notice that it is contemplating" a departure if a ground is "not identified . . . either in the presentence report or in a party's prehearing submission").

18

at 705 (recognizing that a proper "plea colloquy" remedies "[a]ny misleading information).  Thus, Phillips's claim that his guilty plea was involuntary or unknowing clearly fails on the record.

### D.  Additional Claims in the § 2255 Petition

The waiver provision theoretically bars all the other claims alleged in the petition.  Moreover, the Sixth Circuit on direct appeal rejected the particular tendered arguments based on *Blakely*, Rule 11, and breach of the plea agreement.[16]  The United States alternatively asserts that Phillips may not relitigate those issues.  *See, e.g., Jones*, 178 F.3d at 796.  Phillips contends the relitigation bar is inapplicable because the Court of Appeals dismissed the appeal for lack of jurisdiction (based on the waiver) and did not rule on the merits.  In the Court's view, the procedural result is not as significant as the substance of the analysis and holding.  The Sixth Circuit substantively evaluated the *Blakely*, Rule 11, and breach of plea agreement claims, all in the context of Phillips's efforts to avoid the appeal waiver.  The Sixth Circuit's analysis of underlying identical issues is binding.  *See Phillips*, 143 F.App'x at 671-674.  *See Jones*, 178 F.3d at 796.

The only habeas claim not raised on appeal is ineffective assistance of counsel.  According to the petition, Phillips argues that counsel should have objected during the sentencing hearing when the United States breached the plea agreement and made "inflammatory comments" about

---

[16]

The Court of Appeals found no *Blakely* violation because the District Judge based the departure on Defendant's prior convictions, which *Apprendi*, *Blakely*, and *Booker* expressly sanction.  The Sixth Circuit also rejected the contention that Rule 11(c)(1)(A) bound the District Court to a 96 month prison term, finding Rule 11(c)(1)(A) "relates only to government promises to dismiss or not to bring other charges."  Based on the language in the plea agreement, the Court of Appeals was "satisfied that the agreement was entered under Rule 11(c)(1)(B) as well."  Last, the Court of Appeals found that the Government's objection to Defendant's placement at  FMC Lexington violated the plea agreement, but the Court denied relief because the breach did not affect Defendant's substantial rights.  *See Phillips*, 143 F.App'x at 671-674.

Defendant's bad character.  Phillips also charges that counsel should have pursued a Speedy Trial Act claim.  Irrespective of the waiver provision, the allegations fail on the merits.

First, the record reflects that Phillips pled guilty and strategically "gave up" a Speedy Trial Act motion, among other potential pre-trial issues, in exchange for a concession from the United States that it would not seek an upward departure.  *See* Sentencing at 15-17.  Although the District Court's treatment ultimately devalued the bargain, counsel's advice does not constitute ineffective assistance merely because the strategy was unsuccessful.  *See Strickland v. Washington*, 104 S.Ct. 2052, 2065 (1984)(instructing that "every effort be made to eliminate the distorting effects of hindsight").  Instead, counsel has "wide latitude . . . in making tactical decisions," and the assessment of counsel's performance is "highly deferential."  *See id*.  Under these standards, counsel's advice and performance was not deficient in this case.  The decision to forgo the Speedy Trial Act claim and plead guilty had a clear and reasonable objective – namely, to minimize the possibility of an upward departure effort by the United States.[17]

Second, the Sixth Circuit acknowledged a plea agreement breach when the United States objected to Defendant's request to serve his sentence at FMC Lexington.  *See Phillips*, 143 F.App'x at 673-74.  The request, however, only sought a recommendation from the District Court.  The BOP has the ultimate authority regarding prisoner placement.  *See id*. at 674.  Phillips has not shown whether the BOP would have adhered to a recommendation from the District Court.  Moreover, Phillips has not shown whether the District Court would have made the recommendation had counsel countered any objection from the United States.  *See id*.  Because the outcome is

---

[17]

The Court cannot assess the merits of Movant's theoretical Speedy Trial Act claim.  Phillips suggested no specific Speedy Trial Act argument.

speculative, Phillips cannot demonstrate prejudice or ineffective assistance. *See Strickland*, 104. S.Ct. at 2066-67 (requiring the defendant to show prejudice).

Finally, Phillips contends that counsel should have objected when the AUSA made "inflammatory comments" about Defendant's bad character. The "inflammatory comments" evidently occurred when the AUSA responded to statements that Phillips made to the District Judge. *See* Sentencing at 59-65. The Sixth Circuit, however, found the "prosecutor's attempt to rebut Phillips's statements" did not violate the plea agreement or the Government's obligation to recommend a 96 month sentence. *See Phillips*, 143 F.App'x at 673. Phillips identifies no other basis to object to the comments. As such, and as a matter of law, counsel's failure to contest the statements did not prejudice Phillips. *See Strickland*, 104. S.Ct. at 2066-67.

Thus, in addition to the effect of the waiver, each of these substantive claims alternatively fails, either based on the preclusive appellate decision, or because the ineffective assistance allegations do not satisfy *Strickland*. For the multiple reasons stated, the Court finds no valid basis for relief under the applicable § 2255 standards. *See Watson*, 165 F.3d at 488.

## V. Evidentiary Hearing

Phillips requested an evidentiary hearing. On this record, the Court finds such relief unnecessary. The reviewing court need not conduct a hearing if the allegations in the petition are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Because Defendant's § 2255 claims have no support in law or fact, the record conclusively demonstrates that the motions warrant no relief. *See Blanton*, 94 F.3d at 235. Moreover, the waiver provision applies in this case, barring all claims except those relating to the knowing and voluntary nature of

21

Defendant's guilty plea, and those arguments fail on the plea colloquy record.  For each of these reasons, this matter does not merit additional evidentiary development by way of a hearing.

### VI.  Certificate of Appealability

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Because the plea agreement waiver bars collateral relief for most claims, and because Defendant's arguments also fail as a legal and factual matter, Phillips's case does not meet the § 2253 threshold.  The Court's determination, as to both the waiver and the merits, follows the Sixth Circuit's treatment and is not debatable in this case.  Thus, Phillips has not made a "substantial showing" as to any claimed denial of right, as shown by clear precedent applied to the plain  facts.  The Court recommends that, in the § 2253 context, the District Court refuse to certify any issues for appeal.

### VII.  Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Phillips's § 2255 motions, *see* DE #101 (Case No. 02-101) & DE #38 (Case No. 03-31); and

2) should Phillips make a motion under 28 U.S.C. § 2253, the District Court refuse a Certificate of Appealability as to all issues.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute.  As defined by § 636(b)(1), Fed. R. Civ. P. Rule 72(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  *See also* Fed. R. Crim. P. 59.

This the 12th day of February, 2008.

Signed By:

**Robert E. Wier**

**United States Magistrate Judge**

G:\01-Clerk\2255\02-101 & 03-31 Phillips rec.wpd